Good morning. Good morning. I'd like to reserve three minutes for rebuttal. Okay. May it please the court, my name is Sean Perdomo, and I represent the petitioner, Candelaria de Los Angeles Corpeno Romero, and her son, Javi Alexander Cornejo Corpeno. This case is about a Salvadoran single mother protecting her then 14-year-old child from MARA 18 gang members who killed the child's father, Carlos, in 2010. The killers were identified, arrested, and imprisoned for eight years. Candelaria was present at the police station during the early stages of the investigation and viewed the killers. Upon the killers' release, they stalked Javi, investigated his relationship to Carlos, and physically accosted Javi. The killers threatened to kill Javi's whole family if he did not join the gang. Javi was terrified and quit school. Javi joined Candelaria at her food stand when he saw the killers again. Javi pointed the killers out to Candelaria, and she recognized one of them from the police station eight years prior. Candelaria feared Javi and her family would be killed by the gang, and she eventually fled to the United States. The main issue in this case surrounds the agency's heavy reliance on the immigration judges' nexus finding that the gang members were only motivated to increase their ranks rather than any protected ground. So what's your best case to show that petitioner's experience rose to the level of persecution, and do you have a case where a single death threat and no surrounding instances of physical harm was sufficient? Your Honor, as to the first past persecution case that I would cite would be Hernandez-Ortiz v. Gonzalez, and that one took into consideration the petitioner's age. In that instance, the children were aged seven and nine, and they were accosted by the Guatemalan military, who then tried to forcibly recruit the young petitioners. After applying for asylum, the agency considered the children's ages but did not consider the effect that it would have and how that differentiated from an adult applicant. So your client was 14, right? Yes, he was. And he was at the hearing, correct? No, his testimony was submitted by declaration and it was accepted as true by the immigration judge. Okay, and the immigration judge knew he was 14 at the time, correct? Yes, Your Honor. Okay. But what was missing from the analysis, Your Honor, was that there was a psychological report that was submitted, and it showed that he had a diagnosis of post-traumatic stress disorder as it relates to his experiences when his father had died in 2010. He was in the middle of playing with his father at the family home when he briefly left to go run an errand. When he was gone, his father was murdered. He wasn't told for several years by his mother that this had occurred, and that's when he learned about the backstory about his father being targeted for extortion and then being murdered in 2010. Counsel, I found it significant in the record, and tell me if this is correct, that after Candelaria and Javi fled to, I think, a sister's house five hours away, armed men broke into their home to search for them. Is that true? Yes, that is correct, Your Honor. That is reflected in the record, and that underscores the fact that it relates to nexus, and that is that the persecutors in this instance, Mara 18, continued to search for this family even after they had left. Does it – I thought it also related to the past persecution claim because it reflects an imminence or immediacy of the threat that was – the death threat to Javi when they were accosting him on the school bus or off the school bus as well. What do you think? Yes, Your Honor. Although it was not cited in the briefs, Kaiser v. Ashcroft speaks to this point that what matters in a threats case is whether the persecutors have the will and the immediate ability to carry out the threat. Death threats alone, this Court has already decided in Ayala v. Sessions, is enough to constitute persecution. However, when we look at Duran Rodriguez and the concurring opinion that was drafted by Judge Smith, it cites that death threats alone are sufficient. However, if there are deaths or threats made against family members or other persons closely related to the petitioner, that will also be considered, and that is a strong indicator that it is persecution. Is it relevant that one of the people involved in the death threat was involved in the murder of his father? Yes. That is very significant because that goes to nexus, and that shows that there is a clear link between the father's murder in 2010 to the persecution that then occurred in 2018 when he was forcibly recruited. When he was approached by the gang members, the gang members had mentioned his father specifically, and they actually called him by his nickname. Chicarrone? Is that the – they said he was related to Chicarrone or something? I think it was Chicarron, but – But the difficulty I think you have is that they didn't threaten him because of his father. They said, if you don't join us, we will harm you. They didn't say, we're going to harm you because of your father. I mean, that's a – why isn't that enough for the IHA to reach the conclusion that there wasn't sufficient evidence to show nexus for asylum? I understand withholding a reason. Asylum is a central reason. So why – can you expand on that? Yes. I believe there is substantial evidence in the record that will compel the conclusion that Javi was targeted for one central reason based on his familial relation to his father because circumstantially it shows that the gang members didn't just target him out of the blue. They had followed him on two separate occasions before physically accosting him on the third. During that time period, they conducted an investigation, and when they approached him, they identified him as the son of Carlos or Chicarron. And I think that that is evidence that shows that he was targeted for one central reason based on his familial relationship to Carlos. And if we agree with you as to the nexus error, what's the appropriate remedy in your view? The appropriate remedy for this instance would be to remand for the proper application of legal standards. It appears here that there was substantial evidence in the record and that the immigration judge or the agency, rather, ignored highly probative and dispositive evidence that would have showed nexus under both the one central reason standard for asylum as well as the A reason standard for withholding of removal. You want to reserve the balance of your time? Yes, Your Honor. Thank you. Thank you. Good morning. You look to be the same person that appeared earlier this week. Good morning, yes, Your Honor. May it please the Court, Zachary Hughbanks for the respondent, the United States Attorney General. The petition for review should be denied. Nothing in the record compels reversal of the agency's decision denying asylum, withholding, and torture convention protection. Well, what about as to the nexus? The agency found petitioner's family relationship to Carlos could not be one central reason for persecution because M-18 was only trying to expand their membership. How can that be correct when M-18 members had investigated Javi and told him they knew he was Carlos' son? I mean, at the very least, doesn't identifying Ms. Carlos' son show that the family was a reason Javi was targeted, sufficient for withholding? Your Honor, even under the withholding A reason standard, that evidence compels the finding that these gang members knew who Petitioner was and that they knew he was in a relationship to his father. It doesn't compel a finding that the gang members were motivated even in part by that relationship. A fact finder could easily infer from that interaction that what the gang member was using his father's relationship for was to bring immediacy to their threats and use it as leverage when their ultimate goal here was their base criminality and their efforts to grow the size of their gang. I mean, you know, it's not a coincidence that one of the people that was identified as having murdered his father is involved in tracking him down. They mentioned Carlos' name. You think it's just a coincidence that they're trying to recruit someone who happens to also have been the victim's son? I think Petitioners have to show that the evidence taken as a whole compels a finding that these gang members were motivated by that relationship. Again, a reading of this record could show that these gangs, they recruit young men, adolescents of Javi's age. This happens to wide swaths of the Salvadoran community, and that these gang members specifically used Petitioners' family relationship to his deceased father as a way of bringing immediacy to their threats to add leverage to demonstrate effectively we mean what we say, we are pardoned criminals, as opposed to showing that they were motivated to target this individual because of that relationship itself. There's no demonstration that that is what their motive was, as opposed to, as the agency found, base criminality, the desire to recruit and expand their reach. So what's your best case to show Javi's experience did not rise to the level of persecution? At age 14, he was stalked repeatedly, grabbed by a group of men who threatened to kill him, and one of those men had already killed his father. And it starts up, it seems like the stalking starts up, it looks like the guy went to prison in 2010, and the stalking starts around the summer of 2018, right? And then they've got the 18 and the 18 tattoo. Yes, the record shows that they followed him three times on a school bus, or a bus to school, starting in the summer of 2018. As for cases, if we start with just Sharma, which this court kind of delineated factors to evaluate in the past persecution analysis fully, we look, threats alone very rarely rise to the extreme level necessary to persecution. It's usually a requirement for either more persecutory harm or showing that the threats were so specific, menacing, to constitute actual harm and suffering. So Sharma and then Duran Rodriguez were an individual was threatened twice, once by armed men who the record showed that they were likely hit men for a cartel, but that did not compel a finding of past persecution. So what about Mashiri, which I think the BIA referenced in its decision, where we said threats may be compelling evidence of past persecution, particularly when they are specific and menacing and are accompanied by violent confrontations, near confrontations, and vandalism. And the reason why I bring that up is I referenced to your friend on the other side that armed men broke into the home just days after the threat occurred, and they happened to not be there. Why isn't this threat specific and menacing and followed by a near confrontation enough to put it in the persecution realm? This goes back to the standard review where a fact finder could find that in this specific encounter he was followed three times. The gang members had a relatively short interaction with him. They mentioned his father. They grabbed his hands, and he was able to quickly get away, at which point, or excuse me, before that they said, we will kill you and your family if you do not join us. And then, yes, as Your Honor mentioned, there are references in the record to the home being attacked, presumably by the same or related individuals. But looking at this, the fact finder doesn't have to say that this specific threat when threats constitute persecution in only a small smattering of cases. And to compel persecution, there's often significant past harm, physical harm, lengthy detentions, et cetera. Even at worst, if the fact finder could find its persecution, it's not necessarily compelled. What's unique about this case is one of the alleged persecutors murdered this boy's father. And I agree with you. I think threats alone are an unusual line of cases for persecution. Here you have someone whose father was murdered, and then these immediate threats follow. Doesn't that put us in a different category, or how should we analyze that portion of it? Just to clarify and make sure I understand your question, Your Honor, are you suggesting that the murder of his father should be effectively imputed as persecution onto Havi or the lead petitioner? No, but that it should be relevant, right? I mean, if part of the threat analysis is whether the people making the threats are willing and able to carry them out, and one of the people that did it was actually convicted and served time for murder, shouldn't that have a bearing on the persecution analysis? It certainly could be analyzed when dealing with types of these claims of how effective or can these organizations fulfill their threats. Are they empty threats, or does the organization or individual have the will and ability to carry it out? It can be analyzed, Your Honor. But this also ties back into nexus, where we would have to demonstrate that as well to require remand. And looking at the father's murder, there's no connection to any protected ground whatsoever. And again, I would just note that the murder of the father can't be considered persecution of either petitioner in this case, because that incident had the individuals who murdered his father were not interested in harming psychologically, emotionally, either petitioner in this case. They had their own dispute with the father. How can that be if they threatened the boy, having mentioned the father? They had no interest in harming the child by threatening him? To be clear, Your Honor, I was referring to when they murdered the father. That incident was not motivated by any desire to harm either petitioner in this case. And I would go back to what I said earlier about why they mentioned the father's name. In that brief encounter, a reasonable fact finder can find that the gang members did not do that out of any animus or any desire to punish this one family as opposed to using this fact about the person to bring immediacy leverage to their threats, which it goes back to Rodriguez-Zuniga of what is the actual motivation here as opposed to what instrumentalities or what means does a criminal organization use to reach their end goal, be it pecuniary interest in Rodriguez-Zuniga or here to increase the reach size and criminal impact. Well, like hypothetically, if we found no past persecution but held that the agency erred in ruling out family relationship nexus, do we have to remand to the BIA if we found that? If this court found that the agency erred on the nexus on the family, we principally are relying on nexus for the well-founded fear analysis, Your Honor, so remand would likely be required. This is principally a nexus case when we're looking at the forward-looking portions of the asylum and withholding claims, Your Honor. Okay, so also hypothetically, if we find that Javi did suffer past persecution, do we remand for the agency to apply a presumption of future persecution for both Javi and Candelaria? Are they treated as a unit? Well, as a first point, I do interpret the Board's decision of including the nexus finding for both past and future persecution, so it would have to be both findings. And regarding whether they are a unit, well, they each have their own individual claim, Your Honor, so I'm not aware of regulatory, statutory authority of what this court specifically can do, but as a general immigration law principle, it seems at least theoretically possible that one of the two petitioners in this case, specifically the son, could have a claim and that the mother cannot derive from the son's claim. Don't we look at these claims in unison, though? I mean, you know, the mother's suffering harm as well by the threats to her son, and Javi's, the threat to him was not only about killing him but about killing his mother or killing the family. I sort of look at it in unison. Why would we want to separate them out if we didn't find past persecution from the threat? Well, I was just trying to answer Judge Callahan's question on whether or not if this court did find that Javi, the minor petitioner, experienced persecution, but the mother did not. But the way this case works, the claims are significantly tied up, but I would – I see I'm out of time, but briefly I would note that Javi did experience all of the harm that's alleged. He was the one followed. He was the one threatened face-to-face, whilst the mother, her harm is a third-hand threat that her son received, Your Honor. If there are no further questions, I do see I'm out of time, and the government would rest on our briefs. Thank you, Your Honor. Thank you for your argument. Just picking up briefly where you left off, in Candelaria's declaration back in 2007, when Carlos had received his initial extortion threats, he was threatened and his family was threatened as well. And I think that's what ties all of this together. And what initially occurred before the immigration judge was that he melded the well-founded fear of persecution analysis with the nexus analysis. Had he conducted the well-founded fear of persecution analysis and determined whether it was objectively reasonable for the petitioners to fear returning back to El Salvador, he would have weighed all of the facts that contributed to those that were reasonable. Among those were the initial threats that were received back in 2007, 2008 at the outset, also the murder of Carlos, which was not taken into account in the immigration judge's original decision. The Board of Immigration Appeals did not really weigh that fact in their decision at CAR 4 and 5. They mentioned that Carlos had, in fact, been murdered, but he had been punished. And the way that I read the BIA decision is that it somehow discounts that in its past persecution analysis. And that's how it finds that there was no past persecution. As to nexus, what do you make of Javi's statement in his declaration that, I'm not really sure why they targeted me? He says, I'm not really sure why they targeted me, but he also— Then he says it could be my father, it could be recruitment. He does know. That's correct, Your Honor. And at bottom, that would be a qualification for withholding of removal based on a reason. It doesn't have to be one central reason. So at least for that form of relief, it qualifies. But it's also his speculation. And if you look at the evidence in its totality, you see that the gang at the outset had targeted Carlos, and then from there, they were released from prison. Shortly thereafter, they identified his son and they targeted his son. And then after that, after they fled El Salvador, they also broke into the entire family's home in their absence looking for them. So I think this case shows that there's substantial evidence that shows that the family was in fact targeted, and it was targeted based on what had occurred back in 2007-2008 all the way through 2018 when the family had fled. And also, briefly, for nexus, Garcia v. Wilkinson mentions Parada v. Sessions. And in those cases, it's very similar to this case for nexus in that the harms preceded the threats. And I think that's what makes this case unique among the Central American asylum claims that are received by this court. Typically, extortion threats are received first, and at times there's maybe some physical harm that occurs or something else, and then the family flees. But in this instance, the harm occurred at the very beginning in 2010 when you look at the murder. And then after that, you get threats. So I think that's what makes this case very unique among the cases that this court reviews. And with that, it's submitted, unless you have any more questions. We don't appear to. Thank you both for your argument in this matter. This case will stand submitted.
judges: THOMAS, CALLAHAN, SANCHEZ